**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 7 2012

JAMES W. McCORMACK, CLERK
By:_____
D.P CLERK

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

STANLEY KRUPICKI,
**INDIVIDUALLY AND ON BEHALF**
**OF OTHERS SIMILARLY SITUATED**                                    **PLAINTIFF**

V.                              CASE NO. _4:12-CV-150JMM_

EAGLE ONE, INC.
a/k/a EAGLEONE LOGISTICS
a/k/a PRINT N' MAIL                                              **DEFENDANT**

## COMPLAINT

Comes the Plaintiff, Stanley Krupicki, individually and on behalf of others similarly

situated, by and through his attorneys, Holleman & Associates, P.A., and for his Complaint

against Defendant, Eagle One, Inc a/k/a EagleOne Logistics a/k/a Print N' Mail, states and

alleges as follows:

This case assigned to District Judge _Moody_
and to Magistrate Judge_____ _Volpe_

### I. Introduction

1.      This is a collective action brought to obtain declaratory, injunctive and monetary

relief on behalf of employees of Defendant for violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 *et seq.*, violations of the Arkansas Deceptive Trade Practices Act

("ADTPA"), Ark. Code Ann. 4-88-101 *et seq.*, and unjust enrichment.

2.      Plaintiff, a former delivery driver employed by Defendant, together with others

similarly situated, was improperly and deceptively misclassified by Defendant as an

"independent contractor," or "vendor contractor," or "agent" but in actuality was an "employee"

of Defendant under FLSA, 29 U.S.C. § 203(e)(1).

3.      This action challenges the Defendant's long-standing policy and practice of

willfully misclassifying the status of its employees, resulting in the unlawful denial of the rights, obligations, privileges, and benefits owed to Plaintiff and to other similarly situated employees.

4.      At all times relevant to this action, Plaintiff and those similarly situated have been entitled to the rights, protection and benefits provided under the FLSA.

5.      Defendant failed to pay Plaintiff and those similarly situated overtime compensation as prescribed by the FLSA.  Further, Defendant illegally shifted to Plaintiff and those similarly situated the burden of purchasing and maintaining trucks and equipment necessary to operate Defendant's business.   In an even more brazen move to shirk its obligations under the law, Defendant illegally shifted to Plaintiff and those similarly situated the burden of hiring and paying helpers (whom it classified as "sub-agents"), while at the same time retaining full control of the sub-agents' daily activities.  All the while, Defendant took out excessive and impermissible deductions from the weekly paychecks of Plaintiff and those similarly situated.

6.      On information and belief, other current and former employees of Defendant are also entitled to recover damages against Defendant for the reasons alleged in this Complaint. Pursuant to 29 U.S.C. § 216(b), the Plaintiff is permitted to maintain this action "for and in behalf of himself . . . and other employees similarly situated."  Any similarly situated employee wishing to become a party plaintiff to this action must give "his consent in writing to become such a party" and such consent must be filed with this Court.  29 U.S.C. § 216(b).  Plaintiff's consent form is attached hereto as Exhibit A and is incorporated herein by reference.

## II. <u>Parties</u>

7.      Plaintiff is an individual resident of Pulaski County, Arkansas.

8.      Defendant is a corporation organized under the laws of Arkansas, with its

2

corporate headquarters located in Fort Smith, Arkanas. It registered agent is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas.

9.      Defendant is an "enterprise" as defined by 29 U.S.C. § 203(r)(1), and engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

10.     Defendant's gross volume of sales made or business done has exceeded $500,000, exclusive of excise taxes, in each of the last three years.

11.     At all times relevant to this lawsuit, Defendant was Plaintiff's "employer" as defined by the FLSA, 29 U.S.C. § 203(d).

### III.  Jurisdiction and Venue

12.     The FLSA authorizes private parties to bring actions to recover damages for violations of FLSA's wage and hour provisions. This Court has jurisdiction over the parties and the subject matter of this action, pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's ADTPA and unjust enrichment claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Eastern District of Arkansas, Western Division.

### IV.  Factual Allegations

14.     Defendant is, and was at all times relevant herein, in the business of providing transportation and delivery services to customers in several states, including Arkansas, Oklahoma, Texas, Louisiana, Alabama, Mississippi, and Tennessee.

3

15.     Starting in or about December, 2006, Plaintiff was employed by Defendant as a delivery driver operating out of its North Little Rock warehouse facility.

16.     As a condition of employment, Plaintiff had to fill out a job application, including a pre-employment screening consent form, submit to a drug screen, and undergo a background check.  Plaintiff was charged a $250 fee for the drug screen and background check.

17.     Defendant provided the following "benefits" to Plaintiff: on-the-job accident medical insurance, weekly indemnity of gross commissions, accidental death and dismemberment insurance, off-the-job accident medical expenses of up to $5,000 per year, direct deposit, 1099s, and tax escrow.

18.     Defendant provided the following "optional benefits" to Plaintiff: BasicCare limited medical plans, accident plans, cancer insurance, critical illness insurance, short term disability, and term life insurance.

19.     In return for providing said "benefits," Defendant charged Plaintiff a $21.00 weekly "ICS" fee, which it deducted from his weekly paycheck.  The $21.00 weekly fee was increased to $24.00 effective June 1, 2010.

20.     Defendant also deducted an "administration" fee equal to 2.25% of Plaintiff's gross weekly revenue from Plaintiff's weekly paycheck.  The "administration" fee was increased to 2.75% effective January, 2011.

21.     An additional "cargo defrayment" fee, equal to 1.5% of Plaintiff's gross revenue, was also withheld from Plaintiff's weekly paycheck.

22.     Further, a "handheld scanner" fee equal to 1.25% of Plaintiff's gross revenue was withheld from his paychecks.  This fee was raised to 1.5% effective June 1, 2010.

Employment Relationship

23.     During the course of his employment, Plaintiff worked for Defendant 10-12 hours a day, Monday through Friday, for a total weekly average of 50-60 hours.  Defendant failed to compensate Plaintiff and those similarly situated for the time worked in excess of forty hours each week.

24.     Plaintiff had to sign in at the warehouse facility no later than 6:30 a.m. each work day.  In the event of arriving late for work, Plaintiff faced a $20 sorting fee, as well as possible termination.

25.     Plaintiff's initial task each morning was to sort the packages to be delivered that day, and then make the delivery routes in time to get back to the North Little Rock warehouse by 6:00 p.m.  In the event of coming back later than 6:00 p.m., Plaintiff was charged the cost of warehouse employees working overtime, as well as possible termination.

26.     In order to complete his tasks on time, Plaintiff hired several persons throughout the course of his employment.  These hires were subject to approval by Defendant, were required to complete an application for employment with Defendant, and undergo Defendant's background and drug screening.  Defendant deducted charges for such screenings from Plaintiff's paycheck.  Defendant referred to these employees as Plaintiff's "sub-agents."

27.     For each such such sub-agent, Plaintiff had to pay the drug screening and background check fees; weekly "ICS" fees; administration, cargo defrayment, and handheld scanner fees; as well as insurance premiums and processing fees.  All of these fees were deducted from Plaintiff's weekly paycheck, and Plaintiff was then responsible for paying the "sub-agents" their compensation.

5

28.    Defendant maintained control over the terms and conditions of the sub-agents' employment. Defendant dispatched the sub-agents to other facilities when necessary and at its sole discretion. Throughout the course of Plaintiff's employment, Defendant forced him to fire three different sub-agents for various reasons, without Plaintiff having any say in the matter.

29.    Plaintiff paid his sub-agents at the rate of $100 to $150 per day, free and clear of any deductions.

<u>Delivery Routes and Compensation</u>

30.    Defendant assigned Plaintiff to three delivery routes: Downtown Little Rock ("Route 1"), North Little Rock – Jacksonville – Cabot ("Route 2"), and North Little Rock – Conway ("Route 3").

31.    For all three delivery routes, Plaintiff delivered cargo to Office Depot stores and customers located along each of the routes.  However, from time to time Defendant required Plaintiff to make deliveries to Office Max stores and customers, in which case Plaintiff was given strict instructions to conceal all Office Max merchandise so that no Office Depot employees would become aware of the fact that items for the two stores were commingled on the same vehicle.

32.    For Route 1 deliveries, Plaintiff was compensated on a "piece-rate" basis. Defendant initially paid Plaintiff $1.65 for each piece he delivered.  In or about December, 2009, Defendant changed the amount it paid to Plaintiff to $1.60 per piece.

33.    For Route 2 and Route 3 deliveries, Defendant paid Plaintiff a flat rate of $1,000.00 per week per route. In or about December, 2009, Defendant changed these routes by adding substantially more stops, and therefore substantially increased time and gas expenditures,

6

without providing any additional compensation to Plaintiff.  During the same time period,

Defendant also changed compensation for these routes from "flat rate" to "piece-rate," effectively

giving Plaintiff more work and less money for Route 2 and Route 3.

34.     Defendant regularly failed to compensate Plaintiff for all pieces delivered.

<u>Delivery Vehicles</u>

35.     At the time Plaintiff started his employment with Defendant, Plaintiff owned a

delivery van, which he used during the course of the employment to make deliveries for

Defendant.

36.     As a condition of employment, Defendant required Plaintiff to purchase a second

delivery van.

37.     As a further condition of employment, in or about June, 2007, Defendant required

Plaintiff to enter into a lease-to-own contract for a box truck (the "Truck").  Defendant required

Plaintiff to lease the truck from Bush Leasing Company ("Bush") at an inflated rate.  Plaintiff

and Defendant were both parties to the lease-to-own contract with Bush.  Defendant represented

to Plaintiff that it would make the lease payments to Bush, and would deduct the amount of such

payments from Plaintiff's paycheck each month.

38.     Defendant deducted an excessive amount of money from Plaintiff's paycheck for

the lease payments.   Specifically, Defendant was deducted enough to satisfy Bush lease

payments for any given year within 11 months, and kept the deductions made during the 12th

month of each year for itself, without any justification.

39.     Defendant also withheld $4,800 from Plaintiff's pay for sales tax owed on the

Truck.  Plaintiff later came to learn that Defendant had not paid any such sales tax, and had to

pay the sales tax, effectively for the second time, out of his pocket.

40.     When Plaintiff raised issues related to the Truck, his superiors would tell him that if he did not quit asking questions they would fire him and keep the Truck and sell it to another delivery driver.

41.     On information and belief, Defendant has a practice of terminating its "agents" and keeping the vehicles that the "agents" leased as a condition of their employment, thereby forcing them to forfeit all of their interest in such delivery vehicles.

42.     Plaintiff incurred out of pocket expenses for gas, vehicle upkeep and maintenance, as well as maintaining insurance on the vehicles throughout the course of his employment with Defendant.  Defendant failed to reimburse Plaintiff for these expenses.

43.     Plaintiff's gas expenses amounted to an average of $120 per route per week.

Additional Charges and Deductions

44.     In addition to the improper charges and deductions listed above, Defendant would unilaterally and without consulting with Plaintiff buy clothing for Plaintiff and his "sub-agents" that bore Office Depot and Eagle One logos, and deducted monies for clothing expense from Plaintiff's paycheck.

45.     Defendant required Plaintiff to purchase a pallet jack and dollies, without reimbursing Plaintiff for the expenses.

46.     Defendant required Plaintiff to use its hand-held scanners.  When a scanner had to be replaced, Defendant ordered new scanners for Plaintiff and deducted $2,500 for each replaced scanner.  Despite Plaintiff's requests to see an invoice showing how much it cost Defendant to purchase the hand-held scanners, Defendant refused to provide any such invoices.   Defendant

8

further charged Plaintiff for damage to warehouse garage doors on three different occasions with the same lack of accounting or proof of damage, or proof that Plaintiff had been responsible for any such damage.

Termination

47.     On or about December 5, 2011, Plaintiff raised the issue of compensation with his superiors. Specifically, Plaintiff complained that due to low pay and excessive deductions, he was making less than minimum wage and was unable to support himself despite working 50 to 60 hours per week.

48.     On or about December 12, 2011, Plaintiff was terminated at the direction of Brad Schultze, Defendant's regional manager.

49.     Upon information and belief, all delivery drivers employed by Defendant are, and were at all times relevant herein, subjected to the same policies and practices described herein.

50.     Defendant has been notified on previous occasions, or should have known, about the violations of the FLSA. It has taken no action, despite demands and notice. Defendant's actions are willful and are taken with knowledge that its acts violate the wage and hour provisions of the FLSA.

51.     The unlawful policies and practices followed by Defendant have been in place for a period in excess of three (3) years and is in place at the present time.

V. <strong>Collective Action Allegations</strong>

52.     Plaintiff brings his claims for violations of the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by Defendant as delivery drivers, paid on a piece-rate or flat-rate basis, whose weekly income does

9

not meet the overtime compensation requirements of the FLSA working in Arkansas and

throughout the United States, at any time within the applicable statute of limitations period.

53.     Plaintiff's claims may be brought and maintained as an "opt-in" collective action

pursuant to § 216(b), as prospective members of the FLSA Collective Action are similarly

situated to Plaintiff and have claims that are similar to Plaintiff's claims for relief.

54.     Questions of law and fact common to the collective action as a whole include, but

are not limited to, the following:

> a.     Whether Defendant unlawfully failed and continues to fail to compensate FLSA Collective Action Plaintiff and prospective FLSA Collective Action Plaintiffs for hours worked in excess of forty (40) each week in violation of the FLSA, 29 U.S.C. § 201 *et seq.*;
>
> b.     Whether Defendant's failure to pay overtime compensation to the FLSA Collective Action Plaintiff and prospective FLSA Collective Action Plaintiffs was willful within the meaning of the FLSA.
>
> c.     Whether Defendant failed and continues to fail to provide accurate wage statements itemizing all actual time worked, wages earned, and deductions incurred by the FLSA Collective Action Plaintiff and prospective FLSA Collective Action Plaintiffs.

55.     Plaintiff and the FLSA Collective Action Plaintiffs are similarly situated and are

and/or were subject to Defendant's common policy, practice, or plan of requiring them to work in

excess of forty (40) hours per workweek without paying them overtime compensation as

prescribed by the FLSA.

56.     The names and addresses of the prospective FLSA Collective Action Plaintiffs are

available from Defendant, and notice should be provided to the prospective FLSA Collective

Action Plaintiffs via first class mail to their last known address as soon as possible.

**FIRST CLAIM FOR RELIEF**

**Failure to Pay Overime in Violation of the**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***

**(Brought by Plaintiff on Behalf of Himself and All Others Similarly Situated)**

57.    Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above as if they were set forth again herein.

58.    At all times relevant herein, Plaintiff, together with those similarly situated, has been entitled to the rights, protections and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

59.    At all times relevant herein, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendant has employed and/or continues to employ "employee[s]," including Plaintiff and each of the prospective FLSA Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendant has had gross operating revenues in excess of $500,000.00.

60.    Section 207(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires employers to pay non-exempt employees one and one-half times their regular rate of pay for all time worked over forty hours per workweek.

61.    Plaintiff and those similarly situated were not exempt from the overtime provisions of the FLSA.

11

62.     Plaintiff and those similarly situated regularly worked in excess of forty hours per workweek without overtime compensation from Defendant.

63.     Defendant violated, and continues to violate, the FLSA by failing to pay FLSA Collective Action Plaintiffs overtime compensation for all hours worked in excess of forty hours each week.

64.     Defendant knew or should have known that Plaintiff and those similarly situated were entitled to overtime pay and knowingly and willfully violated the FLSA by failing to pay them overtime compensation.

65.     Defendant has not acted in good faith, and does not have reasonable grounds to believe its actions and omissions were in compliance with the FLSA.  As a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described in 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendant acted in good faith in failing to pay its employees minimum wage, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

66.     As a result of Defendant's violations of law, FLSA Collective Action Plaintiffs are entitled to recover from Defendant attorney's fees, litigation expenses and court costs, pursuant to 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

**Violation of FLSA Anti-Retaliation Provision**
**Fair Labor Standards Act, 29 U.S.C. § 215(a)(3)**

67.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above as if they were set forth again herein.

68.     At all relevant times, Defendant's conduct was governed by the FLSA, including its anti-retaliation provision, which makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this [act], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

69.     Plaintiff, by submitting verbal complaints to the Defendant, engaged in protected activity as defined and governed by the FLSA.

70.     Defendant engaged in retaliatory conduct against Plaintiff when it terminated Plaintiff's employment approximately one week following Plaintiff's complaint.

71.     Defendant's conduct was in direct violation of the anti-retaliation provision of the FLSA, for which statutory penalties should attach.

72.     Plaintiff also seeks an Order directing the Defendant, its agents and officers, to not engage in harassment, intimidation, bullying, or retaliating conduct towards the other similarly situated employees that may seek to join this matter.

### THIRD CLAIM FOR RELIEF

**Engaging in Deceptive and Unconscionable Trade Practices
In Violation of Arkansas Deceptive Trade Practices Act
Ark. Code Ann. § 4-88-101 *et seq*.**

73.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above as if they were set forth again herein.

13

74.     The ADTPA makes it unlawful to engage in any "unconscionable, false, or deceptive act or practice in business, commerce, or trade" Ark. Code Ann. § 4-88-107(a)(10).

75.     Defendant engaged in an unconscionable, false, and deceptive act or practice in business in violation of ADTPA when it deducted an excessive amount of money from Plaintiff's paycheck for the Truck lease payments, and kept every 12th lease payment to itself without justification.

76.     Defendant engaged in an unconscionable, false, and deceptive act or practice in business in violation of ADTPA when it withheld $4,800 from Plaintiff's pay ostensibly to pay for the sales tax owed on the Truck, but instead kept the money to itself.

77.     Plaintiff suffered actual damages as a result of Defendant's violations of the ADTPA, and is entitled to recover his damages, including punitive damages, together with attorney's fees and costs of litigation, pursuant to Ark. Code Ann. § 4-88-113(f).

### FOURTH CLAIM FOR RELIEF

**Unjust Enrichment**

**(Brought by Plaintiff on Behalf of Himself and All Others Similarly Situated)**

78.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above as if they were set forth again herein.

79.     By illegally and deceptively misclassifying their employment status, Defendant was able to shift to Plaintiff and to those similarly situated the burden of purchasing and maintaining trucks and equipment necessary to operate Defendant's business, as well as the burden of paying "sub-agents." Defendant further took out excessive and impermissible deductions from the weekly paychecks of Plaintiff and those similarly situated. In addition to

14

weekly, re-occurring deductions, Plaintiff would from time to time deduct excessive and unjustifiable amounts for clothing, loading equipment, and scanners, among other items.

80.     Defendant was unjustly enriched at the expense of Plaintiff and those similarly situated.  Defendant received benefits from Plaintiff and those similarly situated, and it would be unfair, unjust, and inequitable to allow Defendant to retain those benefits.

81.     Plaintiff and those similarly situated are entitled to recover from Defendant damages resulting from the misclassification of their employment status, and from Defendant's policy and practice of taking out excessive and impermissible deductions from their paychecks.

## DEMAND FOR JURY TRIAL

82.     Plaintiff demands a trial by jury upon all issues herein.

WHEREFORE, Plaintiff prays that Defendant be summoned to appear and answer; that the Court designate this action as a collective action on behalf of the Collective Class and prompt issuance of notice to all similarly situated members of the Collective Class apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms; that this Court enter an Order directing the Defendant, its agents and officers, to not engage in harassment, intimidation, bullying, or retaliating conduct towards the other similarly situated employees that may seek to join this matter; that the Court enter a judgment against Defendant for an amount equal to Plaintiff's and similarly situated employees' unpaid overtime pay at the applicable overtime rate; that the Court enter a declaratory judgment, declaring that Defendant has willfully and knowingly violated its statutory obligations and deprived Plaintiff and all those similarly situated of their rights, protections and entitlements under the Fair Labor Standards Act as alleged herein; that the Court grant Plaintiff and all those

15

similarly situated judgment against Defendant for liquidated damages in the amount equal to unpaid wages; that the Court order a complete and accurate accounting of all the compensation to which Plaintiff and all those similarly situated are entitled; that the Court enter a declaratory judgment, declaring that Defendant violated the ADTPA; that the Court grant Plaintiff and all those similarly situated judgment against Defendant for actual and punitive damages sustained as a result of Defendant's violation of the ADTPA; that the Court enter a declaratory judgment, declaring that Defendant was unjustly enriched at the expense of Plaintiff and those similarly situated; that the Court grant Plaintiff and all those similarly situated damages in the amount of Defendant's unjust enrichment; that the Court grant an award for attorney's fees, litigation costs and expenses, together with all applicable interest; and that the Court grant any other just and proper relief.

Respectfully submitted,

HOLLEMAN & ASSOCIATES, P.A.
200 West Capitol Avenue, Suite 1620
Little Rock, AR 72201
Telephone: (501) 975-5040
Facsimile: (501) 975-5043

By: _____

John T. Holleman, AR Bar No. 91056
jholleman@johnholleman.net
Maryna O. Jackson, AR Bar No. 2009111
maryna@johnholleman.net
Amber R. Schubert, AR Bar No. 2009150
amber@johnholleman.net
Michael Muskheli, AR Bar No. 2007229
michael@johnholleman.net

## EAGLE ONE

## PLAINTIFF CONSENT FORM

I hereby consent to join the action against EAGLE ONE as a Plaintiff to assert claims for overtime pay. If this case does not proceed collectively, I also consent to join any subsequent action to assert claims against EAGLE ONE overtime pay. During the past three years, there were occasions when I worked over 40 hours per week while employed by . As an employee/former employee of EAGLE ONE, I consent to becoming a party Plaintiff to this lawsuit, to be represented by HOLLEMAN & ASSOCIATES, P.A. and to be bound by any settlement of this action or adjudication of the Court. Consented to on this _20_ day of ____Feb____, 2012.

**EXHIBIT**

A